1-24-2488 He will be Odette Simmons Don't worry, we'll wait for them They always say short arguments win cases, so we're ahead of schedule. This is a first. So civilized. We're usually not here when that happens. Okay, if counsel's all settled in, we can get started. We've allotted 15 minutes aside. We're familiar with the briefs. We're going to hold you to the time. So my question for the appellant is, how much time do you want on reserve for rebuttal? Five minutes. Five minutes, very good. Okay, whenever you're ready. Good morning, your honors, counsel. May it please the court, Ryan Miller for appellant Odette Simmons. The state charged Mr. Simmons with aggravated criminal sexual abuse, a Class II felony requiring lifetime registration and designation as a sexual predator, based on the allegation that he pinched the nipple of a family member who was under the age of 17. The state did not prove Mr. Simmons guilty of this offense because it did not establish, beyond a reasonable doubt, that he made this contact for the purpose of sexual arousal or gratification. What other purpose could it have been, counsel? Your honor, where the witness's account of this was that Mr. Simmons made the contact, laughed, and then walked away, and whether family members who lived together, that suggests that Mr. Simmons saw this as something that was either joking or maybe playfully affectionate, which is not to say that it's necessarily appropriate or inoffensive, but the question is what was going through his mind at the time, and was that that he was doing this for the purpose of sexual arousal or gratification. So here it seems that, again, he thought that this was not something at all sexual in nature, and the state has not presented any case law establishing that this is an inherently sexual act. So the first time it was inadvertent, or B.C. believed it to be inadvertent, so then the second time it begs the question as to what happened then. You're referring to the day before? Yes. That's right. So that incident the day before was in her bedroom, again. She agreed that it was inadvertent. And the second time, yes, it does seem that it was an intentional touching, but that is a separate element that, again, where there's no case law demonstrating that this is inherently sexual, intent isn't sufficient to prove the purpose element. So the First District's opinion in Peeble v. Wells illustrates that this, A, is not an inherently sexual contact, and, B, that this is not the facts here do not rise to the level of sexual purpose. So in Wells, the defendant there was a high school coach and security guard who had grabbed the buttock of the complaining witness about a month prior, and then at the time he made the same contact here, he made a plainly sexual statement, which was, come to practice early and show me what you've got, just don't tell my wife. So there the First District relied on both sets of circumstances, in addition to the fact that two other students had testified that that defendant had a pattern and practice of ingratiating himself with students and then using hugs to initiate inappropriate contact. So, again, showing that that is not inherently sexual and that much more circumstantial evidence is needed. Here we're missing any of that circumstantial evidence. There was no contemporaneous statement at all, let alone something so obviously sexual as in Wells. There were no physical signs of arousal. Both Mr. Simmons and the witness were clothed, albeit she was not wearing a bra. There were several other people at home at the time. There was no force used. And so these are the circumstances that, well, there's no one definite test that Illinois courts have applied. These are the circumstances that courts look to. They are all absent here. But it's ultimately a question of fact. And at this point, if any reasonable trier of fact could have concluded that it was of a sexual nature, we're bound by that, are we not? Yes, but here, based on these facts, it would not be reasonable for any rational trier of fact to reach that conclusion. Again, there is simply a complete absence of facts for which the State to have met its burden beyond a reasonable doubt that that is what was going through Mr. Simmons' mind at the time. Again, it cannot be that it's simply the act itself. There needs to be some other circumstances showing that he was doing this, again, for the purpose of arousal or gratification. So in the absence of anything demonstrating that, no rational trier of fact could reasonably find that that element had been met beyond a reasonable doubt. Is there law that says it can't be the act itself? I mean, what are you citing for that? You're just saying, what are you citing for that? So Mr. Simmons doesn't challenge that. There are certain acts that are inherently sexual. Penetration. Correct. So there are certain acts that, yes, the act itself can be proved. Pinching nipples, nod. Exactly.  Four times, with no bra, of a teenager. Those are all circumstances, yes? They're circumstances, and again, it's not to insist that that is appropriate or that the witness couldn't have felt offended by that. But again, it's why was Mr. Simmons doing it? And those mere circumstances are not enough to reach that level of, again, a sexual purpose. Can you address his statements to law enforcement? Sure, Your Honor. So in that interview, on the second day after he had been held overnight, the main statement that he had made in that interview was responding to a compound question from an officer. The officer had asked, did you get any feelings behind that, or did you get an erection behind that? And he said, maybe. And so, importantly, when that officer testified at trial, she admitted that was an ambiguous answer because it was an ambiguous compound question. The state also, twice before trial, admitted that it was unclear what he meant. Was he referring to feelings or an erection? On appeal, the state has disavowed any reliance on that interview, has not claimed it to be inculpatory as to this element. And I'll also add that the remainder of that interview, he makes clear that his answer to that question was in no way referring to an erection. He was saying it was feelings, and he was saying he felt bad to hear that this witness, who was a family member to him, had felt in any way harmed or offended by any of his conduct. But at no point in the interview did he admit to the pinches specifically, and again only came off as very sad to hear that she had felt any sort of harm behind this, but he is not in any way admitting to a sexual purpose or any arousal at all. So the interview is not any evidence at all as to the sexual purpose element. Can you also address B.C.'s statement that after this incident he came into her bedroom, kissed her neck, and made a grunting noise? Yes, Your Honor. So she testified that either minutes or hours later Mr. Simmons came into her room, which she had already testified was normal. And, yes, hugged her, kissed her on the neck, and then made a grunting noise. Was that clear how long after the incident this occurred? Correct, Your Honor. It could have been up to hours later. In addition, in her written statement that she made the day after, in which she was told to write everything that happened down, she said something different. She said that he, in fact, went into her grandmother's room, Mr. Simmons' longtime partner, and doesn't mention that he had gone into her room afterwards. And she did not elaborate on what that grunting noise was. Mr. Simmons was 55 at the time, perhaps not the most unusual noise as we age. But in any event, no evidence that it was sexual in nature. And, again, it was up to hours later. It's too far attenuated to the actual act that we're concerned with to sort of retroactively impute a sexual purpose to that act that had happened earlier. So back to his feelings, where you indicate that it meant that he was feeling bad. Did he also say, and that it was wrong? That's right, Your Honor. And so what was the it he was referring to that was wrong? So at the early stages of that interview, he had no idea why he was there. After the officers continually mentioned the idea of having touched her breast or pinched her nipple, he eventually sort of acquiesced to that that must have happened. That's probably why he's sitting in the station house right now. And he essentially acknowledges, yes, if that happened, then it was wrong, and I feel bad about that. If it happened.   And, again, it's really only after the officers insist upon that quite repeatedly. So, again, where this is not an inherently sexual act, and this case is really lacking, again, all of the circumstances that courts typically look to to find circumstantial evidence of this element, this court should either reverse Mr. Simmons' conviction. Okay. So is your argument that he didn't have the intent or that the act did not occur? Our argument is that even if the act occurred, he did not have the intent. Okay. To ask this court to reverse his conviction or, in the alternative, reduce it to a battery. Thank you. Thank you, counsel.  Whenever you're ready. Good morning. May it please the court, my name is Nathan Wydell, and I'm here on behalf of the people of the state of Illinois. This case is about a 55-year-old man pinching the nipple of a 15-year-old girl four times. The only issue before this court is whether this type of touching, this pinching, was for the purpose of sexual gratification or arousal. Based on this record, there was sufficient evidence for a rational trier fact to find, beyond a reasonable doubt, that it was. Now, when reviewing this issue, this court may infer intent based on the act itself. That is, the pinching of a young woman's nipple. Why the act? Because the law allows courts to infer intent based on circumstantial evidence, including from the very nature of the act itself. The act of touching a young woman's breast is sexual by its very nature. Indeed, during closing arguments, the defendant's own attorney acknowledged, quote, if there was evidence that he touched her nipple, that could be considered inherently sexual. That's page 213 of the record. In a sufficiency of the evidence case, like this case, all reasonable inferences must be drawn in favor of the people. Here, there is but one inference from the nature of the act itself. Defendant pinched the victim's nipple for the purpose of sexual gratification or arousal. But let's also be very clear that there was additional circumstantial evidence. During the trial, the victim testified, and the court found that her testimony was, quote, extremely credible and courageous. The victim testified about events on Saturday, February 12, 2022. She testified that she was in her bedroom, the defendant entered her bedroom, and they had a conversation. She acknowledged that there was nothing unusual about this. They would talk from time to time. But then the defendant kisses her neck, hugs her, and then as defendant leaves the room, his hand brushes against her breast. To the credit of the victim, she acknowledged that this could have been an accident. She didn't think anything of it. She didn't tell her grandma. But then on the next day, she testifies on Sunday, February 13, 2022. She takes a shower. She changes into a pair of shorts, puts on a brown tank top. She's not wearing a bra. As she is walking in an interior hallway of their home, the defendant approaches her, hands her a honey bun snack, hugs her, kisses her neck, and pinches her nipple four times. One, two, three, four times. The victim testifies that she goes into her bedroom, and sometime thereafter, the defendant enters into her bedroom, hugs her again, kisses her neck, and then makes a grunting sound. When you add up all the evidence, it was more than sufficient to permit a rational trier of fact to find, beyond a reasonable doubt, that he touched her for the purpose of sexual gratification or arousal. Two questions. First of all, are you relying, as I understand it, the kissing the neck and the hug are common between them, that there's nothing to suggest that she did not view that as sexual. The state was not contending that that was sexual at all. Is that correct? I don't think she qualified that hug, that kiss, as being either sexual or not sexual. She just testified to the fact that it occurred. But it also was common. It happened in the past. I believe she testified that then the talking was common. I don't recall her testifying that the hugging and the kissing specifically was common. I don't know if there's testimony on that one way or the other. But what we're arguing is that the hug by itself, the kiss by itself, you can't infer intent just based on that. It's when you add it all together, it provides context. And it was reasonable for the court to look at that, the trial court to look at all that, to infer the requisite intent. Is the state relying at all on his statements, when he was under arrest, about what his feelings were? So I'll take issue with my colleague's statement that the state's position is that these statements are not inculpatory. They are to a certain extent. So the defendant, as Your Honor acknowledged, had mentioned in one of these statements that it was wrong. And you asked, what was he referring to? And what he was referring to, I believe, was the touching. He denied many things, but ultimately he admitted that it was wrong. And so I think the statements by the defendant are inculpatory to the extent that they corroborate the victim's testimony that there was a touching. Beyond that, as counsel, I think, correctly stated, there was a question posed to the defendant. And it was, I think, fairly described as a compound question, whether he had any feelings, whether he had an erection. And his response was, a little bit. And during the cross-examination of the detective, she acknowledged that she was unsure what he was referring to in regard to a little bit. So I, and to answer your question more directly, I believe that there are aspects of the defendant's statement that are inculpatory. That is, he admitted to a touching, and he admitted that it was wrong. Thank you. If there are no further questions, all right, then I'll close with, for these reasons, and those stated in the people's brief, we ask this court to affirm defendant's conviction of aggravated criminal sexual abuse. Thank you for your time. Thank you. Mr. Miller, final word. So just very, very briefly, Your Honors. I believe counsel for the state had noted that the day prior, there was this hug and this kiss, and then I believe what was said was that as Mr. Simmons left the room, his hand brushed against her breast. The witness made clear that it was sort of as he was withdrawing from the hug that happened, so that there's a different context than sort of walking away and then making contact versus withdrawing from a hug. And that's on page 148 of the reported proceedings. I'll add also that I agree with counsel for the state that the witness actually did not really testify how common is hugging or kissing for them specifically, but looking to people via Ostrowski from the second district, it makes clear that, of course, kissing between family members is very commonplace. And so where there's no evidence whatsoever of any history of this sort of contact or conduct or inappropriate behavior towards anybody, let alone this witness from Mr. Simmons, there's no reason to move away from the default that, of course, a hug and a kiss between family members is common. Finally, I would argue that the state has waived any reliance on appeal for the interview. They state in their brief on page 15 that that interview was not required to show sexual intent, and they don't make any argument why it did, so that arguably has been waived. But again, for the reasons noted earlier, that interview is not inculpatory and really demonstrates that Mr. Simmons had no sexual purpose behind this contact. So again, I would ask that this court reverse his conviction. I do have one question that is not necessarily an issue here, but your client was sentenced to two years probation. Does he also have registration? Yes, he has lifetime registration on the sex offender registry. And beyond that, also designation as a sexual predator from conviction for aggravated criminal sexual abuse, which I understand sort of creates even more onerous requirements on the registry. Thank you. Okay, thank you, counsel. The matter has been taken under advisement. And with that, we'll adjourn.